UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN BOWMAN, #238951,              )
                                    )
                Petitioner,         )        Case No. 1:04-cv-256
                                    )
v.                                  )        Honorable Robert Holmes Bell
                                    )
PAUL RENICO,                        )
                                    )        **REPORT AND RECOMMENDATION**
                Respondent.         )
_____)

This is a habeas corpus action brought *pro se* by a state prisoner pursuant to 28 U.S.C.

§ 2254.  Petitioner is serving a mandatory sentence of life imprisonment, imposed by the Kent

County Circuit Court on July 10, 2000, after a jury found petitioner guilty of first-degree murder,

MICH. COMP. LAWS §750.316, and possession of a firearm during the commission of a felony, MICH.

COMP. LAWS §750.227b.  The Michigan Court of Appeals issued a published opinion which provides

a concise summary of the events surrounding the murder of Carl Jeffrey Waddell:

> This case arises from the murder of a midlevel Grand Rapids area drug dealer found
> shot to death in his apartment.  Forensic evidence admitted at trial indicated that the victim
> had been shot several times at close range while asleep in bed.  However, no evidence of
> forced entry into the apartment, which was generally secured by deadbolt, was found.
>
> Evidence offered at trial indicated that on the eve of his death the victim was in
> possession of a large amount of cash and cocaine and was alone in the apartment with
> defendant, who, despite being described as the victim's "shadow," was considered an
> "outsider" in a tightly knit group of associates centered around the victim.  After the murder,
> defendant gave police and several individuals a number of inconsistent accounts regarding
> his whereabouts at the time of the murder.  Defendant also began uncharacteristically
> spending money and was observed wearing more expensive clothing than usual.  At about
> that same time, defendant was arrested and jailed for reasons unrelated to the murder and,
> while in jail bragged to a fellow inmate that he had killed someone who had "disrespected"
> him.  Defendant further related details of the killing that were consistent with the victim's

murder but that only the killer and those who actually examined the body would have known at the time.  Defendant also told the inmate that he had stolen both cash and cocaine in conjunction with the murder.

During the course of the year-long investigation into the murder, defendant spoke with police on several occasions.  Although initially denying any involvement in the killing and theft, defendant ultimately acknowledged that he "may" have shot the victim, but indicated that he must have blacked out because he could not specifically recall the events of that evening.

*People v. Bowman*, 656 N.W.2d 835, 837-38 (Mich. Ct. App. 2003).

On April 15, 2004, petitioner filed his habeas corpus petition raising the three grounds

set forth verbatim below:

Ground one:   THE CIRCUIT COURT JUDGE VIOLATED THE RULES OF EVIDENCE AND KEVIN BOWMAN'S CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE AND COMMITTED REVERSIBLE ERROR WHEN HE SUPPRESSED PROPOSED DEFENSE TESTIMONY ON OTHER POSSIBLE MURDERERS.

Ground two:   BY HIS STRUCTURAL ERRORS IN INSTRUCTING ON THE PROSECUTION'S BURDEN OF PROOF BEYOND REASONABLE DOUBT, THE CIRCUIT JUDGE VIOLATED KEVIN BOWMAN'S RIGHT TO A JURY TRIAL AND DUE PROCESS, INCLUDING BY INSTRUCTING THE JURY THAT THEY SHOULD BE "FIRMLY CONVINCED" OF HIS GUILT AND THAT BOWMAN WAS "ENTITLED TO THE BENEFIT OF A DOUBT IF THERE'S A REAL POSSIBILITY IN YOUR MIND, NOT JUST A MERE POSSIBILITY THAT HE'S NOT GUILTY."

Ground three: THERE WAS INSUFFICIENT EVIDENCE OF PREMEDITATION AND DELIBERATION AND OF THE CHARGED FELONY OF LARCENY TO SUPPORT THE CONVICTIONS FOR FIRST DEGREE MURDER UNDER EITHER THEORY OF PREMEDITATED OR FELONY MURDER.

(docket # 1, ¶ 12A, B, and C).  Upon review, I recommend that the petition be denied.

## Procedural History

**1.    Trial**

Petitioner's twelve-day jury trial in Kent County Circuit Court began on May 8, 2000, and concluded on May 25, 2000, with the verdict finding petitioner guilty of first-degree murder on the theories of premeditated and felony murder, and possession of a firearm during the commission of a felony.  During petitioner's trial, the prosecution presented the testimony of numerous witnesses. Witness testimony established that the victim, Carl Jeffrey Waddell,  was a Grand Rapids area drug dealer.   Waddell  associated  with  a  small  group  of  individuals  referred  to  as  the  "Corleons." Petitioners was a recent addition to Waddell's circle.   Petitioner was described as being Waddell's "shadow" between Waddell's release from jail in April of 1998 and his death later that month. Waddell and petitioner lived in a small, one-bedroom apartment.  Waddell's bullet-ridden corpse was found inside the apartment.  Testimony established that before the murder, petitioner had few clothes and little money.  By contrast,  Waddell generally kept hundreds of dollars in cash in his pocket.  Waddell's general practice was to keep the drugs and a significant portion of the cash generated from  sales in a location other the apartment.  The apartment was considered a hideout of sorts, removed from the neighborhood where the drugs were sold.  The apartment's door was kept locked with a deadbolt.

Jody Holman, the victim's girlfriend, testified that she and Waddell got into a fight, and they were no longer on speaking terms.  Ms. Holman relayed a message to Waddell, with petitioner acting as the intermediary,  that Waddell had to get his stuff (drugs and cash) out of Holman's house.  Waddell removed the cash and cocaine from Holman's residence shortly before he was murdered.  Witness testimony established that on April 26, 1998, Waddell had a substantial

quantity of cocaine and thousands of dollars in cash inside the apartment he shared with petitioner. Amsie Wright and Cortney Spencer testified that on April 26, 1998, they saw petitioner in possession of a 9 mm handgun. Cortney Spencer's testimony established that he dropped off petitioner and the victim at their apartment late in the evening on April 26, 1998. A forensic pathologist estimated that Mr. Waddell died at approximately 2 a.m. on the morning of April 27, 1998, after having been shot five times. The victim's body was discovered mid-day on April 27, 1998 by his younger brother. Police found no sign of forced entry into the apartment. Police found no guns, money, or cocaine in the apartment. The victim had only a single penny left in the pocket of his pants. Petitioner's fingerprints were found inside the apartment. Police discovered petitioner's wallet hidden inside a vacuum cleaner's bag. Petitioner gave multiple conflicting accounts of his whereabouts at the time of the murder. Although petitioner initially denied any involvement in the killing and theft, petitioner later acknowledged that he "may" have shot the victim, but claimed that he must have blacked out because he could not specifically recall the events of that evening.

Witnesses testified that after Waddell's murder, petitioner began spending large sums of money on clothes and parties. While petitioner was detained in jail on other charges, petitioner told Bradley Topham that he had killed someone who had "disrespected" him. Petitioner advised Topham that he had shot this person in the eye and throat with a 9 mm handgun, left the victim for dead in his bed, and took the thousands of dollars in cash and cocaine. Testimony established that Waddell was killed by shots fired from a 9 mm handgun. Waddell was shot twice in the face. Imbedded gunpowder indicated that the two shots to Waddell's face had been fired at a distance somewhere between 8 inches and 4 feet. The three remaining shots were into Waddell's throat, left shoulder, and chest. The victim's injuries, bloodstains, and recovered bullets and casings were

consistent with Waddell's having been shot repeatedly while he was lying on the bed.  No physical evidence suggested that Waddell had made any attempt to defend himself at the time he was shot.

The defense strategy was to portray petitioner as a patsy and to attempt to persuade the jury that petitioner had been set up to take the fall for some other individual who may have killed Waddell.  On May 23, 2000, after the prosecution had rested and the jury had been excused for the day, Judge Dennis C. Kolenda met privately in chambers with the attorneys for the purpose of discussing the jury instructions.  During this meeting, the prosecutor disclosed his intent to object the next day at trial if defense counsel attempted to introduce certain testimony from witnesses Scott Parks and Wayne Williams.  A discussion followed regarding the nature of the anticipated testimony and potential grounds for admission of the otherwise inadmissible hearsay testimony under the Michigan Rules of Evidence.  Judge Kolenda did not issue any ruling, but did express some skepticism about the admissibility of some of the anticipated testimony from Parks and Williams. Scott Parks and Wayne Williams testified the next day at trial.  (docket # 16 at 1213-30).  The prosecution made only two objections during the testimony of Wayne Williams.  The objections and the court's rulings are set forth below:

Q      Okay.  Now, what eventually happens with those pistols, do you know?

MR. GABRY: Your Honor, again, I'm going to make objections if we're not talking about things this man did or is actively involved in.  If he's just going to tell us what other people have told him, then I have an objection.

THE COURT: Assuming the question is what did he do with the pistols or see done with them [sic].  If it is simply what someone else told him, then we need to hear from that someone else, unless, of course, the statement satisfies an exception to the hearsay rule.

BY MS. NIEUWENHUIS:

Q      What did you do with those pistols after you put them up?

-5-

A      I put the pistols up in the back room, and then I got locked up.

* * *

Q      Okay.  Now there came a point in time Carl Waddell is found dead.  Did there come a point in time when Kevin [petitioner] came out to the jail to visit you?

A      Yes.

Q      And did you have a conversation regarding what happened with Carl?

A      Yes, I did.

Q      Can you tell this jury what the conversation was about and what Kevin told you?

MR. GABRY: Well, I'm certainly going to object, your Honor.  This is the worst kind of self-serving hearsay.  This is not an admission offered by me against the party opponent.  I don't know of any exception to the hearsay rule that allows the defendant to get in his own statements in through witnesses.

THE COURT: Miss Nieuwenhuis?

MS. NIEUWENHUIS: Well, your honor, there's been many, many statements made by Mr. Bowman to the police department, and this simply goes to parts of a conversation regarding a Cadillac and whose Cadillac this might have been.

THE COURT: Well, to the extent the statement is made by a defendant to someone else and is offered against the defendant, it's not deemed hearsay.  It's what we call a party admission.

To the extent that the statement is necessary to satisfy the rule of completeness, as was the tape that we heard yesterday, it's admissible for that purpose, but to the extent that it's a defendant's own statement being offered by him for his own benefit, it clearly is hearsay, and there is no exception to the hearsay rule that I know of, that governs it.  Accordingly, the objection is sustained.

If you look at 801(d), whatever the number is, I can't remember, but if you've got the book right there in front of you you'll note it requires to be admissible, that the statement be offered against the party, not by the party.

BY MS. NIEUWENHUIS:

Q      Do you, of your own personal knowledge, know a person by the name nickname of Mokie?

-6-

       A       Yes, I do.

(*Id.* at 1215, 1218-19).  The prosecutor made no objections during Scott Parks's testimony, and the court made no evidentiary rulings.  (*Id.* at 1224-30).

       After the close of proofs, and outside the presence of the jury, defense counsel made a statement for the record that she had taken Wayne Williams's statement, and that Williams had indicated to her that at some point in time Carl Jeffrey Waddell had come to Wayne Williams's house, was very upset, and had purportedly given Williams a description of events that had caused Waddell to become upset.  Petitioner's counsel argued that the purported statements by Waddell to Williams constituted an excited utterance or present sense impression and were therefore admissible under the Michigan Rules of Evidence.  Defense counsel further related that Mr. Parks had represented to her that he had overheard a conversation wherein "Little Tony" had told some unknown person that he had "shot this nigger and had emptied his gun into him."  (*Id.* at 1236).  Judge Kolenda gave the prosecutor a brief  opportunity to respond, then related for the record the events of the previous evening and the judge's impressions regarding the potential testimony from Wayne Williams:

> I then indicated what I thought the applicable law was and to render things admissible.  I did not rule because no objection was being made then and we weren't on the record.  I was simply responding to the forewarning by the prosecutor.
>
> I indicated that if all Mr. Williams was going to say is that Mr. Waddell was upset after having spoken with a particular person, this Mokie, in particular, and then thereafter started carrying a gun, the testimony would not be permitted about the encounter with Mokie and the fact that Mr. Waddell was upset, because, frankly, there was simply no basis to indicate what he was upset about and no realistic way to, other than wishful thinking, tie his subsequent carrying a gun to any threats by Mokie.
>
> There could have been a whole host of reasons why it was that he was upset after he spoke with this individual: He hadn't been paid properly, he'd gotten some bad news, any one of a host of things could have generated him being upset other than threats.

If, on the other hand, what Mr. Williams heard was Mr. Waddell tell him that Mokie had indeed threatened him, then I would seriously consider admitting the evidence under either 803(1) or 803(2). Admittedly, it's not typically what's admitted under those rules, but nonetheless, the threats would have been a startling event, perhaps, or an event just witnessed and therefore could properly be reported under either one of those two exceptions.

This morning the decision was made not to flesh out any further what it is that Mr. Williams specifically heard. So I can't say, frankly, what would render his testimony admissible was established here.

(*Id.* at 1241-42).

Judge Kolenda made the following observations in relation to defense counsel's representations concerning testimony Parks may have, but did not offer as a witness at trial:

As far as the testimony of Mr. Parks is concerned, Mr. Gabry pointed out to me, and I acknowledged the accuracy of his report, that 804(b)(3), which is the exception to the hearsay rule which was sought to be utilized here to get in this statement by this somebody else that he in fact killed Mr. Waddell, has a final sentence which is usually overlooked.

The sentence reads: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused," both of which are conditions met here, "is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

I asked for the corroborating circumstance and indicated that, of course, if they were presented here today, the statement would qualify under the rule and would be admitted.

I pointed out that I didn't know of any external corroborating circumstances, and therefore we would have to look to the statement itself for to corroborate itself, which, of course, you could do if it contained some information like we heard about the unique location of the wounds to indicate that very well may be true, because how else would the person know it or something like that.

To the extent that the witness, this person, whoever he was described shooting Mr. Waddell, he didn't describe anything that wasn't generic to the act of killing someone or the kind of thing that would be clear public knowledge, and, therefore, those particulars didn't corroborate anything.

The individual then made a statement, allegedly, that he had kicked the door in. If in fact there were evidence of that, and that were not common knowledge, that might, I indicated, sufficiently corroborate his statement to render it admissible, although there is that word, "clearly indicates trustworthiness," and I'm not sure it would have done that, but at least if we would have had such evidence, we'd be in the ballpark, so to speak.

My recollection was that all of the evidence in this case was in fact the door had not been kicked in or anything of the sort, and therefore, the statement describing the act, including that kind of conduct, rebuts itself rather than corroborates itself.

Miss Niewenhuis indicated that she believed the testimony in this case, while it sounded that way on its face, could be assessed by the jury otherwise and indicate that there had been a forced entry of some sort. I once again said if that's the case, establish it, and the admissibility of the statement will be considered.

That wasn't done, and, therefore, I have to stand on my indications yesterday absent that kind of foundation for Mr. Williams' and Mr. Parks' testimony, their testimony appears inadmissible.

I would also note that what was done here was – and I don't fault anyone for doing it, counsel made a decision not to ask certain questions, and so I didn't rule that the evidence was inadmissible. I wasn't called to rule on it at all. I didn't rule yesterday, just indicated what needed to be presented, I thought, to make this evidence admissible.

It wasn't presented. I wasn't asked to admit it otherwise. The decision was made not to pursue it. Therefore, the record is, in that status, whatever that record is, deemed to be, with regard to a foundation, I believe that it doesn't establish the requisite foundation. I can't really now say, therefore, the evidence is excluded, because nobody put it in front of me with a request that it be admitted.

Those are my thoughts on the subject, and if it's considered that the evidence was presented and for the reasons stated, I deem it would be inadmissible as things now stand.

(*Id.* at 1242-45).

Judge Kolenda delivered the jury instructions without objection. On May 25, 2000, the jury returned its verdict finding petitioner guilty of first-degree murder and possession of a firearm during the commission of a felony. On July 10, 2000, Judge Kolenda sentenced petitioner to two years on the possession of a firearm during the commission of a felony conviction, followed by a mandatory sentence of life imprisonment on the first-degree murder conviction. (docket # 17 at 6).

**2.      Appellate Proceedings**

Petitioner, represented by Attorney P. E. Bennett, raised the following issues on appeal:

I.      DID THE CIRCUIT JUDGE VIOLATE THE RULES OF EVIDENCE AND KEVIN BOWMAN'S CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE AND

COMMIT REVERSIBLE ERROR WHEN HE SUPPRESSED PROPOSED DEFENSE TESTIMONY ON OTHER POSSIBLE MURDERS?

II.      BY HIS STRUCTURAL ERRORS IN INSTRUCTING ON THE PROSECUTION'S BURDEN OF PROOF BEYOND A REASONABLE DOUBT, DID THE CIRCUIT JUDGE VIOLATE KEVIN BOWMAN'S RIGHT TO A JURY TRIAL AND DUE PROCESS, INCLUDING BY INSTRUCTING THE JURY THAT THEY SHOULD BE "FIRMLY CONVINCED" OF HIS GUILT AND THAT BOWMAN WAS "ENTITLED TO THE BENEFIT OF A DOUBT IF THERE'S A REAL POSSIBILITY IN YOUR MIND, NOT JUST A MERE POSSIBILITY THAT HE'S NOT GUILTY?"

III.     WAS THERE INSUFFICIENT EVIDENCE OF PREMEDITATION AND DELIBERATION AND OF THE CHARGED FELONY OF LARCENY TO SUPPORT THE CONVICTIONS FOR FIRST-DEGREE MURDER UNDER EITHER THEORY OF PREMEDITATED OR FELONY MURDER?

(Defendant's Brief on Appeal at vi, Statement of Questions Presented, docket #18).  On November 15, 2002, the Michigan Court of Appeals issued its published decision affirming petitioner's conviction.  *People v. Bowman*, 656 N.W.2d 835 (Mich. Ct. App. 2003).

The Court of Appeals found no error in any of the trial court's evidentiary rulings:

Defendant first argues that the trial court erred by declining to allow him to present hearsay testimony regarding persons other than himself who may have harbored a motive and intent to kill the victim.  Specifically, defendant claims that the court should have admitted testimony that the victim was "upset" after driving from a meeting with a fellow drug dealer to the home of a friend, and that a mechanic who knew the victim heard someone in his automobile repair shop boasting that he had killed a man by shooting him in the head.  Defendant claims that the first of these statements was admissible as either a present sense impression or excited utterance under MRE 803(1) or (2), and that the second was admissible as a statement against penal interest under MRE 804(b)(3). We disagree.

We review for an abuse of discretion a trial court's ruling on the admissibility of evidence. *People v. Starr,* 457 Mich. 490, 494, 577 N.W.2d 673 (1998).  With respect to the admissibility of the first challenged statement, a present sense impression is defined under MRE 803(1) as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."  This Court is not overly literal in construing the phrase "immediately thereafter" and will allow a statement made less than a minute or even several minutes after the event observed to qualify under this exception. See *People v. Cross,* 202 Mich. App. 138, 142, 508 N.W.2d 144 (1993).  However, the statement at issue here was not made merely a few minutes after the

conversation being related took place, but following a drive of an indeterminate length from one house to another, and then in a separate conversation with someone not present during the first conversation. To call such an account a "present sense impression" is to rob the phrase of its meaning, and we will not interpret the language of this evidentiary rule in a sense so contrary to its "'fair and natural import.'" See *People v. Morey,* 461 Mich. 325, 330, 603 N.W.2d 250 (1999), quoting *People ex rel Twitchell v. Blodgett,* 13 Mich. 127, 168 (1865) (Cooley, J.). Accordingly, we do not conclude that the trial court abused its discretion by declining to admit the subject statement under MRE 803(1).

We similarly find no support for defendant's contention that this testimony was admissible as an excited utterance under MRE 803(2). The excited utterance exception applies only to a statement that arises from a truly "'startling occasion'" and was "'made before there has been time to contrive and misrepresent.'" *People v. Kreiner,* 415 Mich. 372, 378-379, 329 N.W.2d 716 (1982), quoting *People v. Gee,* 406 Mich. 279, 282, 278 N.W.2d 304 (1979). In addition to considering whether there was time to fabricate the statement, a court must also consider whether the declarant's emotional state would have permitted such fabrication. *People v. Edwards,* 206 Mich.App. 694, 697, 522 N.W.2d 727 (1994). Under none of these standards does the statement in question qualify as an excited utterance. Although defendant offered some detail regarding the substance of and circumstances giving rise to the challenged testimony, the fact that one drug dealer was "upset" after seeing another does not suggest any "startling" event. Indeed, we have found the sexual harassment of a corrections officer at work two days before being murdered (allegedly in connection with the harassment) not to have constituted a startling event, *McCallum v. Dep't of Corrections,* 197 Mich.App. 589, 592-593, 604, 496 N.W.2d 361 (1992), and have similarly ruled that viewing a daughter's body in an open casket four days after she was murdered is not a startling event that allows the admission of a hearsay statement under MRE 803(2), *People v. Lobaito,* 133 Mich.App. 547, 558-559, 351 N.W.2d 233 (1984). In light of these precedents, a disagreement, even a heated or upsetting one, between drug dealers simply cannot be regarded as a "startling event." Moreover, the time between the event in question and the statement itself gave the victim "time to contrive and misrepresent" before making the statement, *Kreiner, supra,* and it does not appear that the victim's emotional state when he made the statement necessarily would have excluded the possibility of such fabrication, *Edwards, supra.* Accordingly, the trial court did not abuse its discretion in refusing to admit the statement as an excited utterance under MRE 803(2).

We similarly find no error in the trial court's decision not to admit the second statement in question, i.e., that, at some indeterminate point, a mechanic heard a certain "Little Tony," who allegedly owned a handgun similar to that with which the victim was killed and was affiliated with a drug organization rival to that of the victim, remark that he had killed someone by emptying a gun into him, and in the process had kicked in both a front door and a bedroom door. Defendant sought to admit this statement under MRE 804(b)(3), which permits the admission of hearsay statements against the penal interest of the declarant. However, under this rule, "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." MRE 804(b)(3). The requirement of

corroborating circumstances for the application of this exception to the general rule excluding hearsay has been enforced in a number of our cases, including *People v. Jensen,* 222 Mich.App. 575, 582-583, 564 N.W.2d 192 (1997), vacated in part on other grounds, 456 Mich. 935, 575 N.W.2d 552 (1998), *People v. Underwood,* 184 Mich.App. 784, 788, 459 N.W.2d 106 (1990), and *People v. Sanders,* 163 Mich.App. 606, 610, 415 N.W.2d 218 (1987), and we agree with the trial court that the evidence proffered here lacked such corroborating circumstances.  Indeed, the condition of the doors in the victim's apartment actually contradicted the statement.  Accordingly, the statement was insufficiently trustworthy to warrant its admission into evidence under MRE 804(b)(3), and the trial court did not abuse its discretion in so ruling.[1]

---

[1]Defendant also asserted at trial, without any elaboration, that this statement was admissible as "a present sense impression or excited utterance."  However, like the previously discussed statement, there is nothing to indicate that this statement was made "while" or even within a few minutes after the killing being discussed took place.  MRE 803(1); *Cross, supra.* Nor was there any indication that the statement was made "while the declarant was under the stress or excitement" caused by that allegedly startling event. MRE 803(2).

656 N.W.2d at 838-39.

The Michigan Court of Appeals found no merit  in petitioner's claim that the trial court's "reasonable doubt" instruction had been erroneous or somehow violated petitioner's due process rights.  The Court of Appeals noted that there was no appellate authority supporting petitioner's position.  The challenged instruction had been taken directly from the pattern criminal jury instructions developed by the Federal Judicial Center, and the instruction had recently been praised by Justice Ginsberg in *Victor v. Nebraska,* 511 U.S. 1, 26-27 (1994) (Ginsburg, J., concurring), as the best available reasonable doubt instruction because it stated "the reasonable doubt standard succinctly and comprehensibly."  The relevant portion of the Court of Appeals' opinion discussing the jury instruction issue is quoted at length below:

The trial court instructed the jury that

[p]roof beyond a reasonable doubt simply means evidence presented here which after you have assessed it leaves you firmly convinced in your own mind that he's guilty. If you are firmly convinced based on the evidence, then you have been convinced beyond a reasonable doubt.

... If based on your careful consideration of the evidence and whatever inferences follow from the evidence you're firmly convinced that [defendant] is guilty of some criminal offense, then you may find him guilty.

If, on the other hand, based on the evidence, the lack of evidence, and inferences which follow, there's a real possibility in your mind, not just a mere possibility, that he's not guilty, then, of course, he's entitled to the benefit of the doubt and has to be found not guilty.

Defendant argues that the instruction, by equating proof beyond a reasonable doubt with proof that leaves the jurors "firmly convinced" of guilt without any "real possibility" of innocence, diluted the standard for a criminal conviction and therefore constituted structural error that deprived him of a fair trial and requires automatic reversal. See *Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). We disagree.

Defendant cites, and we are able to find, no case in which any appellate court has found the challenged instruction, which was taken from the pattern criminal jury instructions developed by the Federal Judicial Center, to be constitutionally defective. See Federal Judicial Center, Pattern Criminal Jury Instructions, pp. 17-18. To the contrary, this instruction has been upheld in a number of federal cases, see, e.g., *Harris v. Bowersox,* 184 F.3d 744, 751-752 (C.A.8, 1999), and *United States v. Artero,* 121 F.3d 1256, 1257-1259 (C.A.9, 1997), and has been highly praised in the concurring opinion of a United States Supreme Court justice:

[W]e have never held that the concept of reasonable doubt is undefinable, or that trial courts should not, as a matter of course, provide a definition....

* * *

.... The Federal Judicial Center has proposed a definition of reasonable doubt that is clear, straightforward, and accurate. That instruction reads:

"[T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the

-13-

doubt and find him not guilty." Federal Judicial Center, Pattern Criminal Jury Instructions, at 17-18 (instruction 21).

This instruction plainly informs the jurors that the prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty.  The "firmly convinced" standard for conviction, repeated for emphasis, is further enhanced by the juxtaposed prescription that the jury must acquit if there is a "real possibility" that the defendant is innocent.  This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly. [*Victor v. Nebraska,* 511 U.S. 1, 26-27, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (Ginsburg, J., concurring).]

Considering the absence of authority finding this instruction to be erroneous, and the weight of authority upholding and commending it, we find no basis for a determination of error.

656 N.W.2d at 840-41.

The Michigan Court of Appeals found that there was "overwhelming" evidence supporting petitioner's first-degree murder conviction:

Finally, defendant argues that there was insufficient evidence to convict him of first-degree murder, either on the theory that he acted with premeditation or that he committed the crime in the course of another felony, in this case, larceny. The elements of first-degree murder are that the defendant killed the victim and that the killing was either "willful, deliberate, and premeditated," M.C.L. § 750.316(1)(a), or committed in the course of an enumerated felony, such as larceny, M.C.L. § 750.316(1)(b). Defendant was convicted under both theories.

We review de novo challenges to the sufficiency of evidence in criminal trials to determine whether, when the evidence is viewed in the light most favorable to the prosecutor, a rational trier of fact could have found all the elements of the charged crime to have been proved beyond a reasonable doubt. *People v. Johnson,* 460 Mich. 720, 723, 597 N.W.2d 73 (1999). Viewed in this light, the evidence was sufficient to sustain the conviction. The evidence that defendant killed the victim was overwhelming. He confessed to the police and to a fellow inmate. Further, there was overwhelming circumstantial evidence of his guilt, including opportunity, presence at the crime scene, improvement in his financial circumstances immediately after the victim's death, and defendant's apparent knowledge of details about the killing that no one but the police and the murderer could have known.

With respect to premeditation, the evidence is even more compelling. In the first place, there is the manner of the death. The victim was shot multiple times at close range while lying asleep, two of the bullets having penetrated his face.  One cannot, under normal circumstances, kill a sleeping person at close range in any fashion other than with premeditation, especially when the person is a close companion and benefactor. As made

-14-

clear by the pathologist's testimony, there was no evidence suggesting sudden rage or self-defense, or any other circumstance under which an unpremeditated killing might occur. Moreover, defendant's own jailhouse confession admitted not only premeditation, but motive, i.e., that the victim "disrespected" him. Defendant's statement regarding the disrespect was, moreover, corroborated by independent evidence concerning the relationship between defendant and the victim. Given this evidence, a rational trier of fact could conclude that, in the middle of the night, when the two were alone, defendant shot the sleeping victim at point-blank range, resentful of the condescending treatment he felt he was receiving. Viewed in the light most favorable to the prosecution, this evidence is more than sufficient to establish premeditation beyond a reasonable doubt.

There was also more than sufficient evidence to conclude beyond a reasonable doubt that the murder was committed in the course of a larceny. Evidence at trial indicated that money, drugs, and guns belonging to the victim were in his apartment immediately before he was shot, but that these items were missing when the victim's body was discovered. This in itself would be enough, when viewed in the light most favorable to the prosecution, to establish beyond a reasonable doubt that the murder was committed in the course of larceny. However, there was also evidence of defendant's newfound wealth immediately following the crime, including his throwing a large outdoor party on Memorial Day and his noticeably more expensive wardrobe. Combined with the evidence that it was defendant who committed the murder, and that he knew that the victim had the missing items in his possession, this was more than sufficient evidence to show beyond a reasonable doubt that defendant committed the larceny.

656 N.W.2d at 841-42.

Petitioner sought leave to appeal to the Michigan Supreme Court raising the same arguments rejected by the Court of Appeals. On May 30, 2003, the Michigan Supreme Court denied petitioner's application for leave to appeal in a form order stating that is was not persuaded that the issues presented should be reviewed by the court. (docket # 20). On April 15, 2004, petitioner filed his petition for habeas corpus relief.

## Discussion

**A.**          **Standard of Review**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001).   The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 125 S. Ct. 847, 853 (2005)(citations omitted).   If a state court adjudicated the claim, AEDPA standards must be applied.   28 U.S.C. § 2254(d).   Thus, even in instances where a state court has not clearly articulated its reasoning, if the circumstances suggest that the state court actually considered and decided the issue, the review is not *de novo,* but is limited by the deferential AEDPA standards.  *Onifer*, 255 F.3d at 316;  *Harris*, 212 F.3d at 943.  *De novo* review is restricted to instances where the state court did not address the merits of a claim.   In that limited set of circumstances,  "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie*, 326 F.3d at 727; *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005)("[W]hen a claim has not been adjudicated on the merits in State Court proceedings, and has not been procedurally defaulted, we look at the claim *de novo* rather than through the deferential lens of AEDPA.")(citations omitted); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning.  A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. at 694 (citations omitted).  A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *Williams*, 529 U.S. at 407; *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001).

"It is important to note, however, that 'an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law.'" *Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir. 2005)(quoting *Williams*, 529 U.S. at 409).  A federal habeas court may not find a state

adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410; *see Bell v. Cone*, 535 U.S. at 694; *Payne v. Bell*, 418 F.3d 644, (6th Cir. 2005)("A state court decision involves an 'unreasonable application' of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts before it in an objectively unreasonable manner.")(citations omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003)(quoting *Williams*, 529 U.S. at 412). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the

-18-

time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004)(describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry"). "'Federal Courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.'" *Payne*, 418 F.3d at 656 (quoting *Cone v. Bell*, 125 S. Ct. at 853). "The state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.'" *Dennis*, 354 F.3d at 517-18 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

Section 2254(d)(2) authorizes a federal court to grant habeas corpus relief where the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. § 2254(d)(2). A federal court may not grant relief under § 2254(d)(2) merely because it disagrees with the state court's factual determination. "Rather, the state court's factual determination must be 'objectively unreasonable' in light of the evidence presented during state proceedings. Furthermore, a state court's factual determinations are presumed correct, and can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Dennis*, 354 F.3d at 518.

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This

presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Applying the foregoing standards, I find that petitioner is not entitled to habeas corpus relief.

**B.      Grounds Raised By Petitioner**

1.      <u>Evidentiary Rulings</u>

Petitioner argues that Judge Kolenda "violated the rules of evidence and petitioner's constitutional right to present a defense and committed reversible error when he suppressed proposed defense testimony on other possible murders." Petitioner's arguments that the trial court's rulings were incorrect as a matter of Michigan law do not provide any basis for federal habeas corpus relief. This court does not review state-court decisions for purported state-law errors. Habeas corpus is available only if a petitioner is in state custody in violation of the federal Constitution or laws. 28 U.S.C. § 2254(a). The federal courts have no power to intervene on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Maldonado v. Wilson*, 416 F.3d 470, 476-77 (6th Cir. 2005)("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'")(quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Questions concerning the admissibility of evidence are generally governed by state law and do not raise a federal constitutional issue, absent a showing that the asserted error infringed a specific constitutional guarantee. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir. 1976); *see Pulley v. Harris*, 465 U.S. at 41. "A state court ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due

process rights." *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001); *see Payne v. Tenn.*, 501 U.S. 808, 825 (1991). "Errors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002); *see Maldonado*, 416 F.3d at 477; *Coburn v. Howes*, 100 F. App'x 328, 329 (6th Cir. 2004)("A habeas court will generally not question errors in the application of state law, especially evidentiary rulings concerning the admission or exclusion of evidence.")(citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1998)).

Petitioner argues that the trial court violated his "right to present a defense" by "not allowing Petitioner to present hearsay testimony regarding persons other than himself who may have harbored a motive and intent to kill the victim." (Pet. Brief at 11). Petitioner is relying on his attorney's representations, made on the record after the close of proofs, regarding testimony that might have been, but was not, offered by Wayne Williams and Scott Parks -- Parks to the effect that he had overheard a statement by Little Tony to someone, and Williams regarding statements Waddell purportedly made to him about carrying a gun sometime prior to the murder. (Pet. Brief at 10-11). Contrary to petitioner's argument, Judge Kolenda did not exclude or "suppress" any testimony from Scott Parks. There were no objections lodged or rulings made by the trial court at any time during Parks's testimony. (Id. at 1224-30). Judge Kolenda did express his impression that it might be difficult for petitioner's counsel to establish a foundation for admission of Parks's testimony under Michigan's Rules of Evidence. Judge Kolenda did not rule that the purported statement by Little Tony overheard by Parks was inadmissible. Counsel elected not to elicit this testimony from Parks at trial. Judge Kolenda indicated after the close of proofs that if he had been called upon to make

a ruling, he would have found that the Parks's hearsay testimony regarding the Little Tony statement lacked the requisite degree of trustworthiness to be admissible under the Michigan Rules of Evidence.  With regard to Wayne Williams, there were only two objections made during his testimony.  The court sustained the objection with regard to what petitioner purportedly told Williams.  No argument was made at trial or on appeal asserting any error in this ruling.  The prosecutor's other objection came after petitioner's counsel asked, "Okay.  Now, what eventually happens with those pistols, do you know?"  Judge Kolenda ruled that there was no problem with counsel's question if Williams was being asked what he had done with the pistols or seen done with them.  If Williams's testimony was going to be based on what someone else told Williams, then an exception to the hearsay rule would have to be satisfied.  After the court made its ruling, defense counsel asked Williams what he did with the pistols, and Williams answered.  The court, therefore, excluded nothing.  Judge Kolenda was never called on to make any ruling on the admissibility of any testimony by Williams concerning threats against Waddell's life that Waddell may have related to Williams.

The Michigan Court of Appeals found no error in any evidentiary ruling by the trial court.  The Court of Appeals either found petitioner's due process argument to be so insubstantial that it was unworthy of further discussion, or it overlooked the argument.  For present purposes, I will assume that the Michigan Court of Appeals overlooked the argument.  Petitioner is therefore entitled to the most favorable standard of review, *de novo* review.  Assuming *arguendo* that Judge Kolenda had actually made a ruling excluding the "evidence" now relied on by petitioner, I find that a ruling by the trial court excluding this hearsay evidence would not have violated petitioner's right to present a defense under the Due Process Clause.

A criminal defendant's right to present evidence in his defense is a limited right.  The Supreme Court recognized the existence of the right in *Washington v. Texas*, 388 U.S. 14 (1967). The Court determined that the Sixth Amendment's Compulsory Process Clause applied to the States through the Fourteenth Amendment's Due Process Clause.  388 U.S. at 17-19.  Texas, however, had not refused to compel attendance by a defense witness, but it had, pursuant to statute, precluded any testimony by a defense witness who had been charged as a principal, accomplice, or accessory.  The Supreme Court held that  Mr. Washington was denied compulsory process for obtaining witnesses in his favor because Texas had  arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable testifying to events that had previously been observed and whose testimony would have been relevant and material to the defense.  *Id.* at 23.  Petitioner has not demonstrated any violation of his rights under the Compulsory Process Clause.  Both Scott Parks and Wayne Williams testified at trial as defense witnesses.

In *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), Supreme Court held that a specific  set of rulings by the Mississippi trial court had acted in combination to deprive Chambers of a fundamentally fair trial in violation of the Due Process Clause.[1]  Chambers had been found guilty of murdering a Mississippi policeman.  Gable McDonald had made four separate confessions that he had shot the police officer.  The prosecution never called McDonald as a witness.  After the defense called McDonald as a witness, on cross-examination the prosecutor elicited from McDonald

---

[1]The *Chambers* opinion concluded with the following statement by the Supreme Court: "In reaching this judgment we establish no new principles of constitutional law.  Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures.  Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial."  410 U.S. at 302-03.

the fact that McDonald had repudiated his confession.  Applying Mississippi's then-existing "voucher" rule which prohibited a party from impeaching its own witness, the trial court refused to allow defense counsel to cross-examine McDonald regarding the repudiation of his confession.  Trial court rulings also precluded any testimony from three defense witnesses who would have testified that on three separate occasions shortly after the shooting McDonald had confessed to committing the crime.  These defense witnesses were prevented from testifying on the basis of the trial court's ruling that their testimony constituted inadmissible hearsay that did not fall within any recognized hearsay exception.  Mississippi  law at that time did not recognize any hearsay exception for statements against penal interest.  Mississippi only recognized a hearsay exception for  statements against pecuniary interest.  410 U.S. at 299.  The Supreme Court found that the testimony excluded by the Mississippi trial court bore persuasive assurances of trustworthiness, and thus, was well within the basic rationale of the hearsay exception for declarations against interest.  *Id.* at 300-02. The Supreme Court found that "the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process."  *Id.*  at 302.

Rather than supporting petitioner's argument, the Supreme Court's *Chambers* decision undercuts it.  Here, the trial court did not exclude any testimony, but even assuming it had, the purported testimony from Parks and Williams did not bear any particular indicia of trustworthiness.  The *Chambers* decision emphasized that although the accused has a fundamental right to present witnesses in his own defense, in the exercise of that right, the accused and the State "must comply with established rules of procedure and evidence designed to assure both fairness and

reliability in the ascertainment of guilt and innocence."[2] 410 U.S. at 302. "The hearsay rule, which has long been recognized by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to triers of fact. Out-of-court statements are traditionally excluded because they lack conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury." 410 U.S. at 298 (citing *California v. Green*, 399 U.S. 149, 158 (1970)). Petitioner has not cited, and I have been unable to locate, a Supreme Court case finding a due process violation under circumstances remotely analogous to petitioner's case.

The Supreme Court has expressly rejected as "simply indefensible" an assertion that the Due Process Clause guarantees a criminal defendant the right to present and have considered all relevant evidence:

> The proposition that the Due Process Clause guarantees the right to introduce all relevant evidence is simply indefensible. As we have said: "The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988). Relevant evidence may, for example, be excluded on account of a defendant's failure to comply with procedural requirements. See *Michigan v. Lucas*, 500 U.S. 145, 151, 111 S.Ct. 1743, 1747, 114 L.Ed.2d 205 (1991). And any number of familiar and unquestionably constitutional evidentiary rules also authorize the exclusion of relevant evidence. For example, Federal (and Montana) Rule of Evidence 403 provides: "*Although relevant,* evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (Emphasis added.) Hearsay rules, see Fed. Rule Evid. 802, similarly prohibit the

---

[2]"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

> introduction of testimony which, though unquestionably relevant, is deemed insufficiently reliable. Of course, to say that the right to introduce relevant evidence is not absolute is not to say that the Due Process Clause places *no* limits upon restriction of that right. But it is to say that the defendant asserting such a limit must sustain the usual heavy burden that a due process claim entails.

*Montana v. Egelhoff*, 518 U.S. 37, 41-42 (1996); *accord Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003)(*en banc*), *cert. denied*, 541 U.S. 905 (2004).  A defendant's right to present relevant evidence "may bow to accommodate other legitimate interests in the criminal trial process," and "[a]s a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve."  *Id.*  The Supreme Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it infringed upon a weighty interest of the accused."  *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)(The application of an Arkansas *per se* rule prohibiting admission at trial of any defendant's hypnotically refreshed testimony violated the defendant's right to testify in her own defense under the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process Clause), *Chambers*, 410 U.S. at 302; and *Washington v. Texas*, 388 U.S. at 22-23).  Michigan's longstanding rule generally excluding hearsay evidence is not arbitrary or disproportionate for the reasons identified by the Supreme Court in its *Chambers* decision.  Petitioner has not demonstrated that the trial court's actions infringed any "weighty interest" remotely analogous to those addressed by the Supreme Court in *Rock*, *Chambers*, or *Washington v. Texas*.  In summary, I find that petitioner was not deprived of a fundamentally fair trial and petitioner's "right to present a defense" arguments do not provide any basis for relieving petitioner of his first-degree murder conviction.

2.   <u>Instructional Error</u>

Petitioner argues that the trial court's reasonable doubt jury instruction was defective and violated his rights under the Due Process Clause. "The nature of the particular instruction given is a matter of state law, and we are not at liberty to grant a writ of habeas corpus simply because we find the state's decision was incorrect under state law." *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2004); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002) ("State law means what the state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254."). Within broad constitutional limits, a state has discretion to determine the elements of its own crimes, what proofs are essential to establish the elements of those crimes, and the available defenses. *See Patterson v. New York*, 432 U.S. 197, 210 (1977). On habeas review, the federal courts are bound by the state courts' interpretation of their own laws. *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975). "The fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. at 71; *accord Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief."). The question for the habeas court is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). "It must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some constitutional right." 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson*, 431 U.S. at 155; *see also Estelle v. McGuire*,

502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000) (same).  The Michigan Court of Appeals found that the reasonable doubt jury instruction was not defective.  There was and is no clearly established Supreme Court precedent suggesting that the instruction given by the trial court was defective.  One Supreme Court justice recently lauded the instruction as the best available reasonable doubt instruction.  I find that the decision of the Michigan Court of Appeals finding no due process violation stemming from the trial court's reasonable doubt jury instruction easily passes review under AEDPA standards.

      3.    <u>Sufficiency of the Evidence to Support Petitioner's First-Degree Murder Conviction</u>

      Petitioner challenges the sufficiency of the evidence to support his first-degree murder conviction.  The applicable standard for determining the sufficiency of the evidence is established by the  Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Under the *Jackson v. Virginia* standard, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319.  Applying this standard, the Michigan Court of Appeals found that the evidence against petitioner was "overwhelming," and there was more than sufficient evidence to support the jury's verdict finding petitioner guilty of  first-degree murder on premeditated murder and felony murder theories.  I find that the decision of the Michigan Court of Appeals regarding the sufficiency of the evidence supporting petitioner's first-degree murder conviction easily passes review under AEDPA standards.  28 U.S.C. § 2254(d).

**<u>Recommended Disposition</u>**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.


Dated:  October 17, 2005                          /s/  Joseph G. Scoville_____
                                                  United States Magistrate Judge



**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).